UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FATIMA DEL CARMEN TORRES DE REYES,

                 Plaintiff,

            v.

TACOS EL GALLO GIRO CORP. and TACUEPIAN
DAMIAN,

                 Defendants.
------------------------------------------------------------------X

**REPORT &
RECOMMENDATION**
20-CV-3474-EK-SJB

## REPORT AND RECOMMENDATION

**BULSARA, United States Magistrate Judge**

On July 31, 2020, Plaintiff Fatima Del Carmen Torres De Reyes ("Reyes")
brought this action against Tacos El Gallo Giro Corp. ("Tacos El Gallo") and Tacuepian
Damian (collectively, "Defendants"), alleging claims under the Fair Labor Standards Act
("FLSA"), 29 U.S.C. § 201 *et seq.* and New York Labor Law ("NYLL"), N.Y. Lab. Law §
650 *et seq.*, and § 190 *et seq.* (Compl. dated July 31, 2020 ("Compl."), Dkt. No. 1). On
May 10, 2021, Reyes moved for a default judgment against defendant Tacos El Gallo.
(Notice of Mot. for Default J. dated May 10, 2021 ("Notice of Mot."), Dkt. No. 10). For
the reasons stated below, it is respectfully recommended that the motion for default
judgment be granted as indicated herein.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Reyes resides in Queens, New York. (Compl. ¶ 7). Tacos El Gallo is a restaurant
operating at 61-12 Roosevelt Avenue, Flushing, New York. (*Id.* ¶¶ 8, 11, 13; Entity
Information accessed May 10, 2021 attached as Ex. 3 to Hassan Decl. dated May 10,

2021, attached as Ex. 3 to Notice of Mot., Dkt. No. 10). Tacuepian Damian owned, controlled, and/or managed Tacos El Gallo. (Compl. ¶¶ 9, 13). Reyes was employed as a "manual worker performing a variety of functions including food service" from around August 2019 through December 2019. (*Id.* ¶¶ 15–16). Reyes alleges that she worked about 60–84 hours each week and was paid at a rate of about $12.66 per hour for each hour worked, including for overtime hours. (*Id.* ¶¶ 17–20). Reyes alleges that she is owed minimum wages and unpaid wages and that Defendants also failed to pay spread-of-hours wages. (*Id.* ¶¶ 19, 23). In addition, Reyes alleges that various state notice and record-keeping requirements were not followed by Defendants. (*Id.* ¶¶ 25–26).

Reyes commenced this action on July 31, 2020. (Compl.). She alleges three causes of action: (1) failure to pay overtime compensation under FLSA; (2) failure to pay overtime, minimum wages, and spread-of-hours compensation under NYLL and its implementing regulations; and (3) failure to pay wages no later than weekly, making improper wage deductions, and failure to comply with the notice, recordkeeping, and wage statement provisions under NYLL. (*Id.* ¶¶ 38–56). Tacos El Gallo was served with a summons and a copy of the Complaint on August 12, 2021. (Summons Returned Executed dated Nov. 23, 2020, Dkt. No. 5 at 2). Tacos El Gallo failed to appear, answer, or otherwise respond to the Complaint. Reyes sought a certificate of default against Tacos El Gallo, (Req. for Certificate of Default dated Dec. 28, 2020, Dkt. No. 6), and the

Clerk of Court entered a default as to it. (Certificate of Default dated Jan. 4, 2021 ("Certificate of Default"), Dkt. No. 7).[1]

Reyes seeks recovery of: (1) $4,800.00 in unpaid overtime wages and an additional $4,800.00 in liquidated damages on her overtime claims under FLSA and NYLL; (2) $3,369.60 in unpaid minimum wages and an additional $3,369.60 in liquidated damages on her minimum wage claim under NYLL; (3) $1,800.00 in unpaid spread of hours wages and an additional $1,800.00 in liquidated damages on her spread of hours claim under NYLL; (4) $2,370.00 in unpaid back wages and an additional $2,370.00 in liquidated damages on these wages claim under NYLL; and (5) a combined $10,000.00 in penalties for not receiving required wage statements or wage notices under NYLL. (Notice of Mot. at 1–2).

I.   ENTRY OF DEFAULT

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

---

[1] Reyes filed a motion for default judgment on May 10, 2020. Notice of Mot. The Court subsequently ordered Reyes to show cause why the motion should not be denied for failing "to mail the papers in support of the motion for a default judgment to Defendant Tacos El Gallo Giro Corp. at its last known business address[.]" Order to Show Cause dated May 13, 2021. Reyes responded by filing an affidavit and proof of service on defendant Tacos El Gallo's last known address. Aff. of Service dated May 28, 2021 ("Aff. of Service"), Dkt. No. 11; Resp. to Order to Show Cause dated May 28, 2021, Dkt. No. 12. The Court also ordered Reyes to show cause why the motion should not be denied for failing to allege certain elements of her FLSA and NYLL claims. Order to Show Cause dated Nov. 2, 2021. Reyes responded on November 30, 2021. Resp. to Order to Show Cause dated Nov. 30, 2021 ("Resp."), Dkt. No. 15.

otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2).

The Clerk entered a default against defendant Tacos El Gallo on January 4, 2021. (Certificate of Default).

A threshold question before reaching liability or damages is whether the defendant's conduct is sufficient to warrant default judgment being entered. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted).

As to the first factor, the failure by Tacos El Gallo to respond to the Complaint demonstrates the default was willful. *See, e.g., Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at * 1 (S.D.N.Y. Dec. 20, 2007). The defendant had sufficient notice of the present litigation. It was properly served with a summons and the Complaint. The motion for default judgment and certificate of default were similarly served upon it. Notwithstanding this notice and service, Tacos El Gallo did not respond to the Complaint, did not appear, and has not in any way attempted to defend itself.

As to the second factor, the Court cannot conclude there is any meritorious defense to Reyes's allegations because Tacos El Gallo did not appear, and no defense has been presented to the Court.  *See, e.g.*, *IndyMac Bank*, 2007 WL 4468652, at *1; *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012). As to the third factor, the non-defaulting party, Reyes, would be prejudiced if the motion for default were denied in this case "as there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 6074, at *2 (Jan. 26, 2009).

As a result, all three factors permit entry of a default judgment against defendant Tacos El Gallo.  The Court now turns to the liability imposed and damages to be awarded in such a judgment.

## II.    LIABILITY

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (E.D.N.Y. Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit

conclusions of law." *LaBarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2020) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.") (footnote omitted). "[T]he court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages." *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 675 (S.D.N.Y. 2011) (citing Fed. R. Civ. P. 8(b)(6); and then citing *Romanowicz*, 577 F.3d at 83 n.6).

As outlined below, the Court respectfully recommends that defendant Tacos El Gallo be found liable for violations of the overtime provision of FLSA; the minimum wage, overtime, unlawful deduction, and spread of hours provisions of NYLL; and the notice and record-keeping requirements and wage-statement provisions of the Wage Theft Prevention Act.

A.    FLSA Coverage

To establish a claim under FLSA, Reyes must prove (1) defendant Tacos El Gallo is an employer subject to FLSA; (2) she is "an employee within the meaning of [FLSA]"; and (3) their employment relationship is not exempted from FLSA. *Edwards v. Cmty. Enters., Inc.*, 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 (1985)).

Employers are subject to FLSA when their employees are either "engaged in commerce or in the production of goods for commerce" ("individual coverage") or

"employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage"). 29 U.S.C. §§ 206(a), 207(a)(1); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009); *see generally Tony & Susan Alamo Found.*, 471 U.S. at 295 n.8. "[T]o properly allege individual or enterprise coverage, [plaintiff] need not do much. Aside from stating the nature of his work and the nature of [his employer's] business, he must provide only straightforward allegations connecting that work to interstate commerce." *Sciacca v. Vectorworks Marine, LLC*, No. 12-CV-1255, 2013 WL 656325, at *4 (M.D. Fla. Feb. 1, 2013) (second and third alterations in original), *report and recommendation adopted*, 2013 WL 655402, at *1 (Feb. 22, 2013); *see also Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544, 2021 WL 4341103, at *3 (E.D.N.Y. June 23, 2021), *report and recommendation adopted*, 2021 WL 4340963, at *1 (Sept. 23, 2021). Reyes has failed to establish individual or enterprise coverage.

1. Individual Coverage

Reyes has not alleged that she was personally engaged in commerce or in the production of goods for commerce. *Blok Chocolatier LLC*, 2021 WL 4341103, at *3; *see also Owusu v. Corona Tire Shop, Inc.*, No. 09-CV-3744, 2013 WL 1680861, at *3 (E.D.N.Y. Apr. 17, 2013) ("[T]he employee bears the burden of establishing his individual coverage [under FLSA]."). By failing to add additional evidence in support of an argument that the Complaint satisfied the "individual coverage" prong, Reyes has conceded the Court's findings in its Order to Show Cause of November 2, 2021, which are repeated and detailed below. (*See* Order dated Nov. 2, 2021). Accordingly, individual coverage does not trigger any FLSA minimum wage or overtime obligation for Tacos El Gallo.

a.    "Engaged in Commerce"

"To determine whether an individual employee is engaged in commerce, courts conduct a fact-specific inquiry into the employment actions of each and every employee asserting a claim under the Act." *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009) (per curiam). "Employees are 'engaged in commerce' within the meaning of [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof." 29 C.F.R. § 779.103. "[T]his includes every employee employed in the channels of such commerce or in activities so closely related to this commerce, as to be considered a part of it as a practical matter." *Id.*

Reyes has not alleged that she was "engaged in commerce." The Complaint alleges merely that Reyes worked "as a manual worker performing a variety of functions including food service[.]" (Compl. ¶ 16). As a basic rule, "if [the plaintiff] did not have any contact with out-of-state customers or businesses, [s]he cannot be individually covered under the FLSA." *Yang Li v. Ya Yi Cheng*, No. 10-CV-4664, 2012 WL 1004852, at *4 (E.D.N.Y. Mar. 23, 2012) (adopting report and recommendation). Where the Complaint makes no allegation that the plaintiff had any "customer contact or contact with out-of-state businesses" the court "cannot conclude" from such "bare allegations" "that [the plaintiff] was engaged in commerce." *Blok Chocolatier LLC*, 2021 WL 4341103, at *4; *see also Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2018 WL 3742696, at *5 (E.D.N.Y. May 18, 2018) ("This is not a difficult undertaking—and the barest one—but it is absent. The Amended Complaint could . . . have said something—the faintest pleading would have likely sufficed—about the

deliveries [of goods]. . . . [N]othing is said about the [servicing of] customers. . . . [T]he customer-nexus of Plaintiffs' activities are too vague or unspecified to establish they were 'engaged in commerce.' As to any equipment used or goods stocked, nothing is said about whether such equipment or inventory originated out of state. Without more, the Court cannot conclude the Amended Complaint's bare allegation about goods can create an inference [about] engagement in commerce."), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 156601, at *1; *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) ("While Ethelberth might be able to establish individual coverage by showing that these supplies and equipment were shipped to or from overseas or out-of-state destinations during his work shifts, Ethelberth has offered no such evidence."); *Fernandez v. Main Glatt Corp.*, No. 12-CV-986, 2014 WL 1310287, at *3 (E.D.N.Y. Mar. 14, 2014) ("As to individual coverage, there are no allegations to suggest that Fernandez engaged in commerce, *i.e.*, that he personally engaged in any 'trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.' Nor are there any allegations that he produced goods for commerce within the above definition of commerce.") (internal citation omitted), *report and recommendation adopted*, 2014 WL 1310291, at *1 (Mar. 31, 2014) (denying motion for default judgment).

b.   "Production of Goods in Commerce"

Similarly, Reyes has not alleged that she produced goods in commerce.

"Produced" means produced, manufactured, mined, handled, or in any other manner worked on in any State; . . . an employee shall be deemed to have engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State.

29 U.S.C. § 203(j). The Complaint does not allege that Reyes was involved in manufacturing any goods. It alleges only that Reyes worked "as a manual worker performing a variety of functions including food service[.]" (Compl. ¶ 16). And it does not allege where the food was served or delivered, where any vendors were based, or from where Reyes may have sourced supplies. Accordingly, without the necessary allegations to support the interstate component, the court cannot conclude Reyes was involved the production of goods for interstate commerce. *Day An Zhang v. L.G. Apparel, Inc.*, No. 09-CV-3240, 2011 WL 900183, at *3 (E.D.N.Y. Feb. 18, 2011) ("[P]laintiff alleges she was a factory worker for Defendant's apparel manufacturing business and that Plaintiff is a covered individual within the meaning of the FLSA. These conclusory allegations, without any factual details addressing defendants' interstate activities, fail to establish that plaintiff was personally engaged in the production of goods for commerce.") (citation and quotations omitted), *report and recommendation adopted*, 2011 WL 900950, at *1 (Mar. 15, 2011).

### 2. Enterprise Coverage

Enterprise coverage exists where an employer has (1) "employees engaged in commerce or in the production of goods for commerce"; and (2) an "annual gross volume of sales made or business done" equal to or greater than $500,000. 29 U.S.C. § 203(s)(1)(A). On default, a plaintiff's allegations are sufficient to subject a defendant to FLSA liability as long as one may reasonably infer that a business was an "enterprise engaged in commerce." *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015) (citing *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 453–54 (S.D.N.Y.2014)). "[T]o properly allege . . . enterprise coverage, [a plaintiff] need not do much. Aside from stating the nature of his work and the nature of [her employer's]

business, [s]he must provide only straightforward allegations connecting that work to interstate commerce." *Payamps*, 2018 WL 3742696, at *9 (quoting *Vectorworks Marine, LLC*, 2013 WL 656325, at *4).

The Court finds that Reyes has provided the factual detail necessary to support a finding that Tacos El Gallo is engaged in interstate commerce and subject to FLSA.

The Complaint alleges "Defendants were in the business of food service business – cooking and selling food to the public[.]" (Compl. ¶ 13). Specifically, Tacos El Gallo operated food trucks at ten or more locations. (Resp. at 13). The Complaint further states that upon information and belief, "Defendants conducted business with vendors and other businesses outside the State of New York" and "Defendants conducted business in interstate commerce involving the purchase of food and other essential supplies[.]" (Compl. ¶¶ 28–29). The handling of items that have "undoubtedly moved in interstate commerce" to their place of use is sufficient to allege enterprise coverage. *See Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) ("[L]ocal business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."); *see also Juarez v. Wheels Pizza Inc.*, No. 13-CV-261, 2015 WL 3971732, at *2 n.3 (S.D.N.Y. June 30, 2015) (finding plaintiff's allegations that he handled goods such as drinks and other supplies that were produced out-of-state to be sufficient to establish that his employer, a pizza stand, was engaged in interstate commerce). The Complaint does not allege that Reyes herself handled such goods, or which employee did, however, given the nature of the business, it is reasonable to infer that *some* employees did handle such items.

In addition, the Complaint alleges Tacos El Gallo made "payment of taxes and other monies to agencies and entities outside the State of New York[,]" and "engaged in credit card transactions involving banks and other institutions outside the state of New York." (*Id.* ¶¶ 30–31). Further, it states upon information and belief, that Tacos El Gallo "transacted business with insurance companies, banks and similar lending institutions outside the State of New York[,]" and used "instrumentalities of interstate commerce such as the United States mail, internet electronic mail and telephone systems." (*Id.* ¶¶ 32–33). Some of the internet activity Defendant engaged in included, for example, using social media sites like Facebook and Yelp to promote the business. (Resp. at 13–14). The use of the internet to make transactions and conduct business can suffice to establish enterprise coverage. *Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356, 2014 WL 1310311, at *6 (E.D.N.Y. Mar. 10, 2014) (finding allegation "that each defendant pays for such goods and materials, and receives payments for rent and maintenance, using payment card transactions processed via the Internet" sufficient to establish coverage), *report and recommendation adopted as modified*, No. 12-CV-1356, 2014 WL 1311773, at *2 (Mar. 28, 2014).

Finally, the Complaint also states that Tacos El Gallo had annual revenues of more than $500,000. (Compl. ¶ 27). This is sufficient on default to establish enterprise coverage. *See, e.g.*, *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *3 (E.D.N.Y. Mar. 31, 2015) (adopting report and recommendation) (finding plaintiffs' allegations "upon information and belief" that defendants' gross revenues were greater than $500,000 were sufficient to establish enterprise coverage) (quotations and citation omitted).

For the foregoing reasons, the Court concludes that under the standards for enterprise coverage, Tacos El Gallo is an employer subject to FLSA. And notwithstanding Reyes's inability to establish individual coverage, the defendant is subject to FLSA and Reyes can seek recoveries for FLSA violations. *See, e.g.*, *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120–21 (E.D.N.Y. 2011) (finding defendants liable on default judgment motion where plaintiffs failed to establish individual coverage but did establish enterprise coverage); *Shim*, 2009 WL 211367, at *2–*3 (same).

      3.    <u>Employment Relationship</u>

Additionally, Reyes is an employee covered by FLSA. Any "individual employed by an employer" is protected under FLSA's minimum and overtime provisions. 29 U.S.C. § 203(e)(1). To determine whether an individual is "employed," "the ultimate question is whether the putative employee is economically dependent on the putative employer. In other words, the court must determine whether, as a matter of economic reality, the worker depends upon someone else's business for the opportunity to render service or is in business for himself." *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quotations and alterations omitted). The Complaint alleges that Reyes was employed by Defendants, and there is no basis from the Complaint to infer anything other than that Reyes was working for a business owned and operated by someone else. (Compl. ¶¶ 15–16). There is also no basis from the Complaint to infer that the employment relationship between Reyes and Tacos El Gallo is exempt from FLSA. *See* 29 U.S.C. § 203 (FLSA "definitions" and exemptions).

B.    FLSA Overtime Claim

FLSA's overtime wage requirement provides that an employee working "in excess of" 40 hours in a given workweek be compensated for that "excess work 'at a rate not less than one and one-half times the regular rate at which he is employed'[.]"[2]  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).  A plaintiff "must allege overtime without compensation in a 'given' workweek," and not "an all-purpose pleading template alleging overtime in 'some or all workweeks.'"  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 201) (citing *Lundy*, 711 F.3d at 114).  Nor is it acceptable for a plaintiff to just track "the statutory language of the FLSA . . . [,] alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation."  *Id.* at 89.  Rather, a plaintiff must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."  *Nakahata v. N.Y.-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).  Only with such factual context will a plaintiff's overtime claim move from merely "conceivable to plausible" and thereby survive a motion to dismiss.  *Dejesus*, 726 F.3d at 90 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Complaint states that "Plaintiff worked about 60–84 hours each week for Defendants and sometimes more; up to 12 or more hours a day, 5–7 days a week."  (*Id.* ¶ 20).  Reyes's claims include the necessary factual allegations to state a FLSA overtime

---

[2] In other words, under FLSA, unpaid overtime wages are calculated by first determining the employee's regular hourly rate, and then multiplying that number by 1.5.  The regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate," 29 C.F.R. § 778.113(a), or the applicable minimum wage if the regular rate falls below the applicable minimum.  29 C.F.R. § 778.5.

violation. The Complaint alleges that for the relevant time that Reyes worked for Defendants, August 2019 through December 2019, she was "paid at a rate of about $12.66 an hour[.]" (Compl. ¶¶ 15–17). The Complaint alleges that Reyes was paid this rate for each hour that she worked, including overtime hours. (*Id*. ¶ 18). Based on these undisputed allegations, the Court finds that Tacos El Gallo is liable for violations of FLSA's overtime provisions.

## C. NYLL Liability

Reyes also claims that Tacos El Gallo violated NYLL for failure to pay state minimum wages, overtime, and spread of hours wages. The Court finds that Reyes has properly alleged liability under NYLL.

A covered "employee" under NYLL is "any individual employed or permitted to work by an employer in any occupation[.]" NYLL § 651(5); *see generally Gonzales v. Gan Israel Pre-Sch.*, No. 12-CV-06304, 2014 WL 1011070, at *9 (E.D.N.Y. Mar. 14, 2014). There are a number of exemptions to that definition, none of which are applicable in this case. *See* NYLL § 651(5). The Complaint alleges that Reyes was an employee of Tacos El Gallo, (Compl. ¶¶ 12, 15–16), an employer under NYLL. (*Id*. ¶¶ 8–11). The Court accepts these factual allegations as true, and concludes that NYLL applies to Reyes.

### 1. NYLL Minimum Wage Claim

The NYLL mirrors the FLSA in most but not all respects. New York requires employers to pay at least a minimum hourly rate to employees and mandates a similar premium for overtime compensation, but also requires that an employee be paid a "spread-of-hours" premium equal to one hour of pay at the statutory minimum wage for each day an employee works over ten hours.

*Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 84 (E.D.N.Y. 2012) (citations omitted).

Defendants failed to pay Reyes the required minimum hourly rate under NYLL. As of December 31, 2018, for New York City employers with eleven or more employees, like Tacos El Gallo, the minimum wage rate was $15.00 per hour. NYLL § 652(1)(a). For the relevant period in the Complaint—August 2019 to December 2019—New York's minimum wage law rates were higher than the federal rate, and the New York wage rate determines what back-wages, if any, Reyes is owed pursuant to FLSA. The Complaint alleges that while Reyes worked for Defendants, she was "paid at a rate of about $12.66 an hour[.]" (Compl. ¶ 17). The Complaint further alleges that Reyes was paid this rate for all hours that she worked. (*Id.* ¶ 18). This is below the minimum wage set by New York under NYLL. The Court finds Tacos El Gallo liable for minimum wage violations under NYLL.

### 2. NYLL Overtime Claim

NYLL's overtime provision specifies that eight hours constitutes a "legal day's work," NYLL § 160, and that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate[.]" 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

Tacos El Gallo also failed to pay Reyes the required overtime hourly rate under NYLL. NYLL's overtime provision specifies that eight hours constitutes a "legal day's work," NYLL § 160(3), and that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate. . . ." 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. Reyes asserts that she worked over 40 hours per week. Specifically, she alleges that she "worked about 60–84 hours each week" and "up

to 12 or more hours a day, 5–7 days a week" for the relevant period.  (Compl. ¶ 20).  The Complaint alleges that Defendants did not pay Reyes the required overtime hourly wage.  (*Id*. ¶ 18).  The Court finds Tacos El Gallo liable for unpaid overtime under NYLL.

### 3. Other Unpaid Wages / Wage Deduction Claim

NYLL § 193 provides that "[n]o employer shall make any deduction from the wages of an employee," unless such deductions "(a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency . . . ; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee[.]"  The Complaint alleges that Plaintiff was not paid $2,370.00 in wages during the last four weeks of her employment.  (Compl. ¶ 19).  Accepting this allegation as true, the Court finds Tacos El Gallo liable for unlawful deductions of Reyes's wages.  *See, e.g.*, *Avelar v. Ed Quiros, Inc.,* No. 13-CV-7017, 2015 WL 1247102, at *7 (E.D.N.Y. Mar. 18, 2015) (adopting report and recommendation) ("Plaintiffs have alleged that defendants made unlawful deductions of 10 percent of their salary from plaintiffs' bi weekly cash payment of wages.  Plaintiffs maintain that the deduction of wages was not in accordance with the provision of any law or any rule or regulation; was not expressly authorized in writing by the plaintiffs; and was not made for their benefit.  These allegations reflect a violation of Section 193 of the NYLL.") (internal citation omitted).

### 4. Spread of Hours Claim

Reyes also alleges a violation of NYLL's spread of hours provision, which requires that an "employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage for any day in which: the spread of hours exceeds 10 hours."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).  This spread of hours

protection extends to covered employees, such as Reyes. *Id.* § 142-1.1(a); *see Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005).

The Complaint states that Reyes "worked about 60–84 hours each week" and "up to 12 or more hours a day, 5–7 days a week" without receiving one hour's pay at the minimum wage rate for any day in which she worked a spread of over 10 hours. (Compl. ¶ 20). The Complaint also states that Reyes "worked a spread of hours of more than 10 hours a day for each day during her employment with Defendants – Plaintiff worked 12 or more hours a day for each day during her employment[.]" (*Id.* ¶ 23). Based on her allegations, the Court can ascertain with reasonable certainty that Reyes worked at least 60 hours a week, for at least 5 days a week.[3] This amounts to 12 hours per day. Reyes did not receive spread of hours pay on those days. Accordingly, she has established Taco El Gallo's liability under the spread of hours provision. *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *9 (E.D.N.Y. Dec. 9, 2019), *report and recommendation adopted*, Order dated March 31, 2020.

### 5. Wage Theft Prevention Act Claim

New York's Wage Theft Prevention Act ("WTPA") requires employers to provide written wage notice "within 10 business days of his first day of employment." *Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *29 (S.D.N.Y. June 9,

---

[3] Reyes asserts that she worked for Defendants for "about 20 weeks" and that she worked "about 60–84 hours each week and likely more, 12 or more hours a day, five to seven days a week" and accordingly, she is owed spread of hours wages for "about 120 days in 2019[.]" Pl.'s Mem. of Law in Supp. of Her Mot. for a Default J. dated May 10, 2021 ("Mem."), attached as Ex. 1 to Notice of Mot. at 8–9; *see also* Compl. ¶¶ 20, 23, 48. The calculations in Reyes's motion assume Reyes worked a spread of more than 10 hours for 6 days per week for 20 weeks of employment. The calculations in this Report and Recommendation assume that Reyes worked a spread of more than 10 hours for 5 days per week for 18 weeks of employment. *See infra* at 21–25.

2016).  "'[E]mployers [must] provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any 'doing business as' names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.'"  *Id.* (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 474 (S.D.N.Y. 2015) (citing NYLL § 195(1)(a))).  The penalty for failing to provide that notice is $50.00 per day, up to $5,000.00.  NYLL § 198(1-b).  The WTPA also requires that employers provide employees wage statements "with every payment of wages" that contain, among other things, the dates of work covered by the statement, the rate of pay, and gross and net wages paid.  NYLL § 195(3).  The penalty for failing to provide those wage statements is $250.00 per day, up to $5,000.00.  NYLL § 198(1-d).  *See Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017).  The Complaint alleges that Tacos El Gallo never provided Reyes with a wage notice at the start of his employment, or a wage statement with each payment, as required.  (Compl. ¶ 25–26 (citing NYLL § 195(1), (3))).  Accordingly, Reyes has sufficiently established liability on this claim.  *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028, 2018 WL

1770660, at *8 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, No. 16-CV4028, 2018 WL 1770555, at *2 (E.D.N.Y. Apr. 12, 2018).[4]

III.   DAMAGES

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup,* 973 F.2d at 158.  "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (internal quotation marks and citations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)).  "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

---

[4] In her Complaint, Reyes also alleges that she "was paid later than weekly by Defendants in violation of NYLL [§] 191(1)(a)(i)" and that she should be awarded liquidated damages on all wages paid later than weekly.  Compl. ¶ 24; *see also id.* ¶¶ 53, 60.  However, Reyes has not addressed this particular claim—*i.e.*, she has not asked to be awarded liability and damages *on all wages paid later than weekly*—in her motion for default judgment.  Therefore, the Court concludes that this claim has been abandoned.  *See Payamps*, 2019 WL 8381264, at *3 n.3.

That being said, because under FLSA "[t]he burden is on an employer properly to record hours," a "plaintiff need not compute FLSA damages with precision." *Harold Levinson Assocs., Inc. v. Chao*, 37 Fed. Appx. 19, 20–21 (2d Cir. 2002). An employee may meet his burden of showing the amount and extent of his hours work through his own recollection. *See Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011). As such, "[i]n a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (collecting cases), *report and recommendation adopted*, 2009 WL 513371, at *1 (S.D.N.Y. Feb. 27, 2009); *see also McLean v. Wayside Outreach Dev. Inc.*, 624 Fed. Appx. 44, 45 (2d Cir. 2015) (district court did not abuse its discretion by failing to hold a hearing to determine damages where the court relied on "a single affidavit only partially based upon real numbers") (citations omitted).

    a.  <u>Overtime Wages</u>

Both federal and state law require that employers pay employees a 50% premium for their overtime hours—that is, the hours in excess of 40 that they have worked in each work week. 29 C.F.R. § 778.105; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4. Although Tacos El Gallo is liable under both FLSA and NYLL for failing to pay Reyes's overtime wages, Reyes cannot recover unpaid overtime compensation under both statutes for any period of statutory overlap. *See, e.g.*, *Pinzon v. Paul Lent Mech. Sys. Inc.*, 11-CV-3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (holding that a plaintiff may "not double dip" or obtain a "double recovery" of unpaid overtime wages under FLSA and the NYLL), *report and recommendation adopted*, 2012 WL 4174410, at *1 (Sept. 19, 2012). "If a plaintiff is entitled to damages under both federal and state

wage law, the Court has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief." *Gamero v. Koodo Sushi Corp.*, No. 15-CV-2697, 2017 WL 4326116, at *11 (S.D.N.Y. Sept. 28, 2017) (alteration in original) (quotations omitted).

The Court recommends Reyes be awarded recovery for unpaid overtime wages under FLSA.[5] The Court may grant those damages which it can ascertain with reasonable certainty. *Fermin*, 93 F. Supp. 3d at 30. Reyes's Complaint alleges that she worked "about 60–84 hours each week[.]" (Compl. ¶ 20). Based on the Complaint, the Court may ascertain with reasonable certainty that Reyes worked 60 hours per week from at least the middle of August 2019 (*i.e.*, August 12, 2019) through the middle of December 2019 (*i.e.*, December 13, 2019). (*Id.* ¶ 15 ("Plaintiff was employed . . . from in or around August 2019 to in or around December 2019.")).[6] Because Reyes does not say

---

[5] Reyes's claim for unpaid overtime wages is pled under both FLSA and NYLL. Compl. ¶ 42, 46. But she can only recover under one statute. *Pichardo v. El Mismo Rincon Latino Corp.*, No. 17-CV-7439, 2018 WL 4101844, at *8 (E.D.N.Y. Aug. 7, 2018) ("Pichardo is not entitled to recover under both FLSA and NYLL for overtime earned during the same period."), *report and recommendation adopted*, 2018 WL 4100480, at *1 (E.D.N.Y. Aug. 28, 2018). While the typical practice is to calculate the award under both statutes and award whichever is higher, here, Reyes concedes that the award is the same under both. Mem. at 8–9 ("In terms of overtime damages, both FLSA and NYLL provide for recovery of overtime wages and liquidated damages using the same standards. . . . [T]he FLSA claims overlap with the NYLL overtime claims so Plaintiff would be entitled to a single award of $4,800[.]").

[6] Reyes does not provide the exact date that she started to work for Defendants or the last date that she worked for Defendants. Because the Court cannot say with reasonable certainly that she started sooner, or continued working later than the middle of each month, the Court uses the mid-point of August 2019 and the mid-point of December 2019 as her estimated first and last days of work, respectively. Specifically, the Court uses August 12, 2019 as Plaintiff's start date, since it is the first day of the second full week of that month. And the Court uses December 13 as Plaintiff's last day of employment, since it is the last day of the second full week of that month.

exactly how many hours she worked per week, and provides only a range of hours worked per week and an estimated range of the number of hours worked per day, (*e.g.*, Compl. ¶ 20 ("about 60–84 hours each week . . . up to 12 or more hours per day")), the Court uses the lowest end of the range provided to calculate how many hours she worked per week, since it cannot say with reasonable certainty that she worked more than the low end of the range provided.  *See, e.g.*, *Yunganaula v. Garcia.*, 19-CV-6247, 2021 WL 5984851, at *2 (E.D.N.Y. Dec. 17, 2021) (adopting report and recommendation) ("Where Plaintiff stated a range of hours worked along with a range of weeks in which he worked those hours each year, the R&R appropriately assumed the low end of the range").  Indeed, Reyes acknowledges her inability to cite to precise dates and urges that the Court make reasonable assumptions in awarding her damages.  (*See* Resp. at 10 ("Similarly, where Plaintiff alleges that she worked between 5–7 days a week, accepting this allegation as true, we can be reasonably certain that she worked 5 days a week.  Likewise, where Plaintiff alleges she worked 12 or more hours a day, we can be certain or reasonably certain that she worked at least 12 hours a day.")).  Accordingly, the Court concludes that Reyes worked 20 hours of overtime each week for the roughly 18 weeks that she worked for Defendants, and is owed an additional $7.50 for each overtime hour worked, beyond what she was paid.

Thus, the Court recommends that Reyes be awarded $2,700.00 in unpaid overtime wages under FLSA.[7]

b. <u>Minimum Wages</u>

NYLL requires that a plaintiff be paid at or above the minimum wage rate. During the period that Reyes worked for Tacos El Gallo, the New York State minimum wage under NYLL for employers like Tacos El Gallo, who have more than ten employees, was $15.00 per hour. *See* NYLL § 652(1)(a). Reyes alleges that she was paid $12.66 per hour for all hours worked. (Compl. ¶ 17). The difference between the required minimum wage and the wage Reyes was paid is $2.34 per hour. The Court can ascertain with reasonable certainty that Reyes worked 60 hours per week for approximately 18 weeks, and recommends that Reyes be awarded $2,527.20 in unpaid minimum wages.[8]

c. <u>Other Unpaid Wages / Wage Deductions Damages</u>

Reyes also alleges that she is owed $2,370.00 in unpaid wages for the last four weeks of her employment with Defendants and is entitled to this recovery as an unlawful deduction. (Mem. at 10; Compl. ¶¶ 19, 56, 60). She explains that for the last four weeks of her employment, she was paid $2,370.00 less than the regular amount she received

---

[7] Reyes asserts that she is entitled to $4,800.00 in unpaid overtime wages. Mem. at 9. This is based on the calculation that she worked 32 hours of overtime each week for 20 weeks, and is owed $7.50 for each overtime hour worked. Mem. at 9. But, as explained, the Court cannot ascertain with reasonable certainty that Reyes worked more than 20 hours of overtime each week. Therefore, the Court reaches its calculation by multiplying $7.50/hour x 20 hours/week x 18 weeks.

[8] Reyes asserts that she is entitled to $3,369.60 in unpaid minimum wages. Mem. at 9. This is based on the calculation that she worked 72 hours a week for 20 weeks and is owed $2.34 for each hour worked. *Id*. However, as discussed, the Court cannot ascertain with reasonable certainty that Reyes worked more than 60 hours per week. Therefore, the Court reaches its calculation by multiplying $2.34/hour x 60 hours/week x 18 weeks.

each pay period.  (Mem. at 10).[9]  This amount of unpaid wages can be ascertained with reasonable certainty and the Court therefore recommends that Reyes be awarded $2,370.00 in unpaid wages.

### d. <u>Spread of Hours Compensation</u>

"Spread of hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than ten hours."  *Cabrera v. 1560 Chirp Corp.*, No. 15-CV-8194, 2017 WL 1289349, at *6 (S.D.N.Y. Mar. 6, 2017) (quotations omitted), *report and recommendation adopted*, No. 15-CV-8194, 2017 WL 1314123, at *1 (Apr. 6, 2017).  Based on the allegations in the Complaint, the Court can ascertain with reasonable certainty that Reyes worked at least 60 hours a week, for 5 days per week, which amounts to 12 hours per day, for approximately 18 weeks, or 90 days.  *See supra* at 22.  Reyes did not receive spread of hours pay on those days that she worked a spread of more than ten hours.

As of December 31, 2018, for New York City employers with eleven or more employees, like Tacos El Gallo, the minimum wage rate was $15.00 per hour.  NYLL § 652(1)(a).  Multiplying the minimum wage rate by 90 days, the Court recommends that Reyes be awarded $1,350.00 in spread of hours pay.[10]

---

[9] Reyes' allegation here is distinct from her claim for unpaid overtime and minimum wages.  Reyes asserts that Defendants simply failed to pay her wages and engaged in wage theft during this period in the precise amount alleged in the Complaint.  Therefore, the Court need not make any assumptions and may simply award the undisputed total amount withheld.

[10] Reyes seeks an award of $1,800.00 in spread of hours recovery.  This calculation multiplies the minimum wage rate by 120 days, which assumes that Reyes worked for Defendants for 20 weeks.  Mem. at 8–10.  As explained above, the Court can only ascertain with reasonable certainty that Plaintiff worked for Defendants for 18 weeks, and that she worked 5 days per week.  *See supra* at 22–23.

e.  Liquidated Damages

Reyes seeks liquidated damages under FLSA and NYLL.  Under FLSA, "[a]ny employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  "The Portal–to–Portal Act, 29 U.S.C. § 251 *et seq.,* which amended [ ] FLSA, affords district courts discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate [ ] FLSA."  *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260).

NYLL also allows for liquidated damages.  An employee can recover liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  NYLL § 198(1–a).  For all NYLL claims that accrued on or after April 9, 2011, an employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due (prior to this, liquidated damages were 25 percent).  NYLL § 663(1).

In light of the default by Tacos El Gallo, there has been no showing that it acted in good faith or that the Court should exercise its discretion to deny liquidated damages. *See Brock v. Wiliamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (noting that employer bears burden of establishing good faith defense under § 260 through "plain and substantial evidence"); *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 459 (E.D.N.Y. 2007) ("Simply put, double damages are the norm, single damages the exception, the burden on the employer.") (quotations and citation omitted); *Xochimitl v. Pita Grill of*

*Hell's Kitchen, Inc.*, No. 14-CV-10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258, at *1 (S.D.N.Y. Nov. 21, 2016).

Nonetheless, Reyes may not recover liquidated damages under both statutes for the same violation. Courts generally allow a single award of liquidated damages, under the statute that provides a plaintiff with the largest recovery. *Leon v. Zita Chen*, No. 16-CV-480, 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017).

Based on the recommendation that Reyes be awarded $2,700.00 in unpaid overtime damages under FLSA, the Court recommends that Reyes be awarded $2,700.00 in liquidated damages under FLSA.

Under NYLL, liquidated damages are available for spread of hours compensation and withheld wages, and are 100% of this total amount. *Calle v. Yoneles Enters. Inc.*, No. 16-CV-1008, 2017 WL 6942652, at *15 (E.D.N.Y. Oct. 24, 2017), *report and recommendation adopted*, 2018 WL 401269, at *1 (E.D.N.Y. Jan. 12, 2018). They are also available for minimum wage compensation. *See Fermin*, 93 F. Supp. 3d at 47 (calculating liquidated damages for plaintiffs on minimum wage and overtime claims). Based on the recommendation that Reyes be awarded $1,350.00 in spread of hours compensation, $2,370.00 in unpaid wages from an improper deduction, and $2,527.20 in unpaid minimum wages, the Court therefore recommends that Reyes be awarded $6,247.20 in liquidated damages under NYLL.

   f.   <u>WTPA Damages</u>

Reyes worked for Defendants for approximately 90 days. *See supra* at 24–25. For the wage notice claim, she is entitled to recover $50.00 per day up to a maximum of $5,000.00. *Supra* at 19. As a result, for the 90 days during which she received no wage

notice, she is entitled to $4,500.00.  For the wage statement claim, she is entitled to recover $250.00 per day up to a maximum of $5,000.00.  *See supra* at 19.  For the 90 days during which she received no wage statements, she is entitled to $5,000.00.  Therefore, Reyes should be awarded a total of $9,500.00 in WTPA damages.[11]

g.  Pre-Judgment Interest

Reyes also seeks pre-judgment interest for her NYLL unpaid overtime, minimum wage, and spread of hour, as well as her wage deduction recoveries.[12]  (Compl. ¶¶ 49, 56, 59–60).  Although it is "well settled" that pre-judgment interest is not awardable under FLSA where liquidated damages are awarded, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (adopting report and recommendation), "NYLL permits the award of both liquidated damages and pre-judgment interest."  *Fermin*, 93 F. Supp. 3d at 48.  Reyes is entitled to an award of pre-judgment interest on her NYLL damages at a rate of 9% per year.  New York Civil Practice Law and Rules ("N.Y. CPLR") § 5004.  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  N.Y. CPLR § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, 12-CV-4760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013) (adopting report

---

[11] As additional relief for these violations, Reyes sought in her Complaint "an injunction directing defendants to comply with NYLL [§] 195(1) and NYLL [§] 195(3)."  Compl. ¶ 60.  This relief is not sought in Reyes's motion for default judgment, thus, the Court concludes that the request for this particular relief has been abandoned.

[12] Pre-judgment interest is calculated based on the unpaid wages due under the NYLL only, not on liquidated damages.  And pre-judgment interest is not available for violations of the wage statement or wage notice provisions of NYLL.  *See Jin Li v. W. Metal Work & Supply, Inc.*, No. 17-CV-1015, 2019 WL 2436275, at *6 n.7 (E.D.N.Y. Feb. 27, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 56849, at *1 (Mar. 29, 2019).

and recommendation).  Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest.[13] *See Fermin*, 93 F. Supp. 3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest[.]") (quotations omitted).  The most commonly used intermediate date is the "median date between the earliest ascertainable date the cause of action existed and the date the action was filed. . . ." *See, e.g.*, *Gunawan*, 897 F. Supp. 2d at 93 (collecting cases).

The recommended minimum wage, spread of hours, unpaid wages, and overtime recoveries available under NYLL are $8,947.20.[14]  Reyes's causes of action accrued on her first day of work.  Reyes began to work for Defendants in August 2019, and completed her employment in December 2019.  (Compl. ¶ 15).  Although Reyes does not provide a particular date that she commenced employment, for the purposes of calculating damages, the Court uses August 12, 2019 as Plaintiff's first date of work.  *See supra* at 22 n.6.  The Complaint was filed on July 31, 2020.  There are 354 days, or about 51 weeks, between these dates.  Half of 354 is 177; 177 days from August 12, 2019 is February 5, 2020.  The Court recommends that prejudgment interest be awarded by the Clerk of Court in a daily amount of $2.21 per day from February 5, 2020, until the date final judgment is entered.[15]

---

[13] Reyes does not seek pre-judgment interest on her federal claim for unpaid overtime wages under FLSA.  *See* Compl. ¶ 43.

[14] This includes overtime wages due under NYLL even though recovery for overtime violations is awarded under FLSA because the award would be the same under NYLL and FLSA.  *See supra* at 21–24.

[15] The total amount ($8,947.20) at nine percent annually results in approximately $805.25 per year in interest, or $2.21 per day (rounded) based on 365 days per calendar year.

## CONCLUSION

For the reasons stated above, it is respectfully recommended that default judgment be entered against defendant Tacos El Gallo and Reyes be awarded a total of $27,394.40 and daily interest of $2.21 as follows:

- $2,700.00 in unpaid overtime wages;

- $2,527.20 in unpaid minimum wages;

- $2,370.00 in unpaid wages;

- $1,350.00 in spread-of-hours pay;

- $2,700.00 in FLSA liquidated damages and $6,247.20 in NYLL liquidated damages;

- $9,500.00 in WTPA damages; and

- pre-judgment interest in an amount to be calculated by the Clerk of Court of $2.21 per day from February 5, 2020 until the entry of final judgment.

- The Court also recommends that the action be dismissed against defendant Tacuepian Damian without prejudice. *See* Fed. R. Civ. P. 4(m). Reyes was required to provide proof of service of the Summons and Complaint on the Defendants by November 25, 2020. (*See* Order dated Nov. 20, 2020). Reyes failed to provide proof of service on Tacuepian Damian and only provided proof of service on Tacos El Gallo. (*See* Summons Returned Executed dated Nov. 23, 2020, Dkt. No. 5). Reyes was also directed to file any motion for default judgment by December 28, 2020. (*See* Order dated Nov. 24, 2020). Reyes only sought a certificate of default against Tacos El Gallo, (Req. for Certificate of Default dated Dec. 28, 2020, Dkt. No. 6), and the present motion only refers to the corporate defendant. As such, it is appropriate to dismiss the Complaint

against whom service was not effectuated and against whom default was not sought. *See, e.g.*, *Othman v. TD Bank, N.A.*, No. 19-CV-6792, 2021 WL 2480672, at *2 (E.D.N.Y. June 2, 2021) (recommending dismissal against certain defendants where service was not effectuated and where plaintiff took no action "besides filing a complaint naming" those defendants), *report and recommendation adopted*, 2021 WL 2474262, at *1 (E.D.N.Y. June 17, 2021).

Any objections to the Report and Recommendation above must be filed with the Clerk of Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.") (quotations omitted).

Reyes shall serve a copy of this Report and Recommendation on Defendants and file proof of such service.

SO ORDERED.

*/s/ Sanket J. Bulsara*  January 25, 2022
_____
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York